**SO ORDERED.**

**SIGNED this 05 day of December, 2008.**



_____
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Designated for on-line use; not designated for print publication

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

ALCARDIO JACKSON, SR.,

                DEBTOR.

CASE NO. 07-21717
CHAPTER 7

**MEMORANDUM OPINION AND ORDER GRANTING UNITED STATES TRUSTEE'S MOTION TO DISMISS IF DEBTOR DOES NOT CONSENT TO CONVERSION**

     The matter under advisement is the United States Trustee's Motion to Dismiss or Convert pursuant to 11 U.S.C. § 707(b). Trial was held on September 17, 2008. The United States Trustee (hereafter UST) appeared by William F. Schantz. Debtor Alcardio Jackson, Sr. (hereafter Debtor) appeared by Kimberly Athie. There were no other appearances. The Court has jurisdiction[1] and is now ready to rule.

---

[1] The Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings

## I. A PRESUMPTION OF ABUSE EXISTS.

### A. Background Facts.

Debtor has been employed as an aviation maintenance mechanic for 25 years. Debtor is single but has a household size of two. Debtor's twenty-two year old son, who is mentally disabled and unemployed, resides with Debtor. Debtor filed a petition for relief under Chapter 7 on August 8, 2007. Form B22A as filed by Debtor shows current monthly income of $5,248.00, deductions allowed under § 707(b)(2) of $7,606.05, resulting in monthly disposable income of negative $2,358.05.

### B. The UST's Contentions.

The UST moves to dismiss under § 707(b)(2) (presumption of abuse) and § 707(b)(3) (case is abusive under totality of the circumstances). Debtor contends the case was properly filed under Chapter 7.

In order to prevail on the assertion that the Chapter 7 case should be dismissed as presumptively abusive, the UST must prove that Debtors current monthly income reduced by the amounts determined under § 707(b)(2)(A) clauses (ii), (iii), and (iv) when multiplied by 60 is not less than the lesser of $11,252.54 (25% of the Debtor's total nonpriority unsecured debts of $45,010.17) or $6,575, which ever is greater; or $10,950. The UST contends this test for presumptive abuse is satisfied because Debtor, when reporting a negative monthly disposable income, has taken two categories of deductions in excess of those allowed by the Code: Vehicle operation expense (line 22); and mandatory payroll deductions (line 26). As to the vehicle

---

arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion to dismiss or convert is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

2

operations expenses, Debtor claims $1,779 (apparently for the seven vehicles listed on Schedule B),[2] whereas the UST claims the expense should be $496 for one vehicle (the basic $296, plus $200 for an older vehicle).  Debtor deducted $1,712 for mandatory payroll deductions, whereas the UST asserts that deductions for 401k loan payments and contributions included in Debtor's expenses should be disallowed, lowering the allowed expense deduction by approximately $1,700.

**C.  Vehicle Operating Expense.**

As to the vehicle operation expense deduction, the Court finds that Debtor may claim expenses for two of his seven vehicles.  Debtor testified he needs one vehicle (the 1994 Cadillac Deville) for his own transportation and a second vehicle (the Neon) for his son.  Debtor's son in past has been employed part time and it is expected that he will again secure such a position after completion of a training program for which he is making application.  At the time of trial, Debtor was driving the Neon because the Cadillac needed repairs.  Under these circumstances, operation expenses for two vehicles should be allowed.[3]  Accordingly, Debtor, who filed for relief on August 8, 2007, is entitled to vehicle operating expenses of $358 for two vehicles,[4] plus $400 because each vehicle is more than 6 years old,[5] for a total of $758.

---

[2] The following three vehicles were operational on the date of filing: a 1994 Cadillac Deville, which was being driven by Debtor on the date of filing, a 1999 Dodge Neon, which Debtor purchased for his son, and a 1993 Chevy pickup.  The following three vehicles were not operational on the date of fling or at the time of trial: 1992 Chevy Converse van, 1989 Cadillac El Dorado, and 1955 Chevy step-side pickup.

[3] *See In re Zaporski*, 366 B.R. 758 (Bankr. E.D Mich. 2007) (single debtor with no dependents allowed operating expenses for two older vehicles where the second was used when frequent repairs to the first made it unavailable).

[4] www.usdoj.gov/ust/eo/babcpa/2007 (Sept. 15, 2008).

[5] Int. Rev. Man. 5.8.5.5.2 (RIA 2008) (available on Westlaw).

3

**D. Payroll Deductions.**

Debtor's payroll deductions shown on line 26 of Form B22C include the following: 401k contribution of $220.55; credit union savings account deposit of $216.67; 401k loan payment on loan one of $291.40; 401k loan payment on loan two of $916.33; and charity payment of $13. The UST contends that the deductions for the 401k contribution, the two loan payments, and the credit union should be disallowed.

The Court finds that the deductions for the 401k contribution and the savings account are not permitted by § 707(b)(2). As stated on Form B22A, line 26, the category of "mandatory payroll expenses" does not include "discretionary amounts, such as non-mandatory 401k contributions." The Court finds that the 401k loan payments are not expenses that may be claimed on line 26. Such repayments are not "mandatory payroll deductions."[6] Further, unsecured debt is not an allowable expense for purposes of the means test.[7] Therefore, only the charitable deduction of $13 per month (which should have been taken on line 40 of Form B22A) is an allowed deduction.

**E. Abuse Test is Satisfied.**

Based upon the foregoing, Debtor's monthly disposable income is increased by $1021 for the vehicles (based upon allowed vehicle operating expense of $758 as compared with claimed deduction of $1779) and $1699 for disallowed mandatory payroll deductions. Debtor's monthly disposable income is therefore increased by $2720, making it positive $361.95. Sixty times

---

[6] *E.g., In re Turner*, 376 B.R. 370 (Bankr. D.N.H. 2007).

[7] 11 U.S.C. § 707(b)(2)(A)(ii)(I) ("notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts"); 11 U.S.C. § 707(b)(2)(A)(iii) (calculation of average monthly payments on account of secured debt).

$361.95 is $21,717, which is not less than the lesser of $11,252.54 (25% of Debtor's total unsecured debts of $45,010.17) or $10,950. The filing of the Chapter 7 case is therefore abusive for purposes of § 707(b)(1).

## II. SPECIAL CIRCUMSTANCES HAVE NOT BEEN PROVEN.

Debtor responds that special circumstances exist to rebut the presumption. The Code in § 707(b)(2)(B)(i) addresses the special circumstances when the presumption of abuse may be rebutted as follows:

> (B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

A debtor seeking to establish special circumstances must comply with the procedural requirements of § 707(b)(2)(B)(ii) and (iii).

This Court examined the special circumstances standard in *Champagne*,[8] where it stated in part:

> From the foregoing [examination of the legislative history], the Court determines that the presumption of abuse test was adopted to cure the perceived problem of debtors electing to file under Chapter 7 when they had the ability to pay a meaningful portion of their unsecured nonpriority debt based upon their current monthly income calculated using the objective criteria of the means test. The focus of the special circumstances factor is financial conditions which justify including additional expenses or reducing income. The burden to establish special circumstances was not set particularly high, making the presumption truly rebuttable. The

---

[8] *In re Champagne*, 389 B.R. 191 (Bankr. D. Kan. 2008) (finding debtor had failed to prove special circumstances relating to student loan expense).

> standard for amendment is special, not extraordinary, circumstances. The procedural requirements impose the condition that the adjustments to income or expenses be shown by affidavit to be reasonable and necessary. The medical expenses and military service circumstances referred to in the statute are mere examples of circumstances where the results of the means test, based primarily on IRS national and local standards, may not accurately demonstrate ability to repay. The statutory requirement that there be no reasonable alternative is linked to the concern that the special circumstances rebuttal not be used as a convenient way for Chapter 7 debtors to select a more expensive life style. The question is whether, given the individual debtor's circumstances, the presumption of abuse has erroneously identified a debtor as having ability to pay a meaningful portion of his or her unsecured debts.[9]

The Court concluded "whether special circumstances are present is a factual determination made on a case-by-case basis. The circumstances which gave rise to the loan are an important, if not the determinative, factor."[10] It therefore rejected a per se rule, urged by the debtor, that all student loan obligations satisfy the special circumstances test.[11]

In this case, likewise, the Court finds that 401k loan payments are not per special circumstances. Debtor has the burden of proof when seeking to rebut the presumption of abuse to show special circumstances "that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative."[12]

---

[9] *Id.*, 389 B.R. at 198.

[10] *Id.*, 389 B.R. at 200.

[11] *Id.*

[12] 11 U.S.C. § 707 (b)(2)(B)(i).

6

Some courts have found under the specific facts presented that special circumstances justify inclusion of 401k loan expenses. For example, in *Cribbs*,[13] the 401k loan was taken out in conjunction with a plan developed by a debt counseling service retained by the debtors to pay credit card debt without filing bankruptcy. These circumstances were identified as "affirmed by clear public policy"[14] and labeled "extraordinary or special, even though voluntary."[15] This loan purpose was contrasted with loans for "unnecessary consumer purchases or other frivolous reasons."[16] *Lenton*[17] is another case where special circumstances were found. Debtor had incurred the loans more then one year prepetition and had used the proceeds to pay credit card debt, thereby reducing the unsecured debt which would otherwise be paid through a Chapter 13 plan. In addition there was no dispute that the paycheck deductions were mandatory so long as debtor was employed by his plan sponsor.[18] Several courts, like this Court in *Champagne* when considering student loan payments, have found the debtor failed to provide sufficient evidence of the circumstances of the 401k loan to satisfy the fact specific test.[19]

The record in this case is sparse. Debtor obtained two loans from his IRA one in 2005 and a second in 2006 for the purpose of starting a restaurant business. However the business

---

[13] *In re Cribbs*, 387 B.R. 324 (Bankr. S.D. Ga. 2008).

[14] *Id*., 387 B.R. at 330.

[15] *Id*., 387 B.R. at 331.

[16] *Id.*

[17] *In re Lenton*, 358 B.R. 651 (Bankr. E.D. Pa. 2006).

[18] *Id*., 358 B.R. at 662.

[19] *E.g., Eisen V. Thompson,* 370 B.R. 762 (D. N.D. Ohio 2007)*; In re Turner*, 376 B.R. at 370; *In re Martin*, 371 B.R. 347 (Bankr. C.D. Ill. 2007).

7

failed after three or four months.  Debtor has been making payments through payroll deductions of approximately $1200 per month, so a substantial amount of the debt has been paid.  Debtor testified that the combined balance of the loans was approximately $20,000.  There was no evidence of the final payment date, no evidence whether Debtor's employer regarded the deductions as mandatory, and no evidence of the consequences of default.  The value of Debtor's exempt interest in pension and profit sharing plans is stated on Schedule C to be $270,098.71.

The Court finds that Debtor has not sustained his burden to prove special circumstances.  The facts in this case are not similar to *Cribbs* and *Lenton*.[20]  Is this case, there is nothing special about the purpose of the loans.  The loans were voluntary for the purpose of starting a business.  Debtor offered no evidence that there was no reasonable alternative to either taking a loan from his 401k assets in 2005 and 2006 or to payment of the loans in 2008 in accord with their terms.  Debtor has therefore failed to rebut the presumption of abuse under § 707(b)(1).

## III. SHOULD THE CASE BE DISMISSED IF DEBTOR DOES NOT CONSENT TO CONVERSION?

Finally, the Court addresses the Debtors' contention that ordering dismissal or conversion would lead to an absurd result.  This contention is grounded upon the different treatment of 401k loan payments under the Chapter 7 test for abuse and when confirming a Chapter 13 plan.  As stated above, when applying the § 707(b)(2)(A) abuse test, absent special circumstances,

---

[20] Even if the facts were similar, the Court may not reach the same result as these decisions.  The reasoning of *Cribbs* and *Lenton* appears to conflict with the Code.  Unsecured credit debt payments are not allowed deductions for purposes of the means test. *See* 11 U.S.C. § 707(b)(2)(A)(ii)(I) ("notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts") and 11 U.S.C. § 707(b)(2)(A)(iii) (calculation of average monthly payments on account of secured debt).  To find special circumstances for 401k loan payments because the loans replaced credit card debts is problematical.

8

payments on 401k loans may not be included in deductions from income. However, when the issue is disposable income for purposes of a Chapter 13 plan, such payments may be included. Section 1322(f) provides:

> (f) A plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute "disposable income" under section 1325.

The description of § 362(b)(19) includes loans from 401k plans.[21]

Based upon this apparent inconsistency, Debtor urges the case should not be dismissed, citing, Skvorecz,[22] a Colorado case. In that case, the Chapter 7 filing was deemed abusive, and the debtor declined to consent to conversion to Chapter 13. The parties had stipulated if debtor

---

[21] 11 U.S.C. § 362(b)(19) provides the stay under § 362(a) does not apply to payment of 401k loans by wage withholding. It states:

> (b) The filing of a petition . . . does not operate as a stay-
>
> (19) under subsection (a), of withholding of income from a debtor's wages and collection of amounts withheld, under the debtor's agreement authorizing that withholding and collection for the benefit of a pension, profit-sharing, stock bonus, or other plan established under section 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code of 1986, that is sponsored by the employer of the debtor, or an affiliate, successor, or predecessor of such employer--
>
> (A) to the extent that the amounts withheld and collected are used solely for payments relating to a loan from a plan under section 408(b)(1) of the Employee Retirement Income Security Act of 1974 or is subject to section 72(p) of the Internal Revenue Code of 1986; or
>
> (B) a loan from a thrift savings plan permitted under subchapter III of chapter 84 of title 5, that satisfies the requirements of section 8433(g) of such title;
>
> but nothing in this paragraph may be construed to provide that any loan made under a governmental plan under section 414(d), or a contract or account under section 403(b), of the Internal Revenue Code of 1986 constitutes a claim or a debt under this title;

[22] *In re Skvorecz*, 369 B.R. 638 (Bankr. D. Colo. 2007).

9

were in a Chapter 13, his 401k loan payment and contribution could be deducted from disposable income, resulting in zero dollar distribution to unsecured creditors. The UST contended that the court was required by § 707(b)(2) to dismiss the case. The debtor argued that dismissal would be contrary to the Congressional purpose behind § 707(b), to require payment of debts when a debtor is able. The court adopted the debtor's position. Focusing on the use of the word "may" in § 707(b)(1) (the court "may dismiss a case . . . , or, with the debtor's consent, convert such a case") the court declined to find dismissal mandatory. Under the circumstances of the case it found that to adopt the trustee's position "would lead to an absurd result."[23] In the case, the UST orally urged the Court not to follow *Skvorecz*, but has not briefed the issue.

Without deciding whether it would follow *Skvorecz*,[24] Court concludes that because of the unrebutted presumption of abuse, this case must be dismissed, if Debtor does not consent to conversion. In this case, there is no evidence this result would be absurd. There is no stipulation that under Chapter 13 no payments would be made to unsecured creditors, and the evidence indicates the possibility of sufficient income for some payments. Because there is only $20,000 left to be paid on the 401k loans and the loan payments are approximately $1200 per month,

---

[23] *Id.*, 369 B.R. at 644.

[24] *Skvorecz* has not been widely followed. Other courts find dismissal mandatory when there is an unrebutted presumption of abuse. Cases on both sides of the question are noted in *Justice v. Advanced Control Solutions, Inc. (In re Justice)*, __ B.R. __, 2008 WL 4368668 (D.W.D. Ark. 2008). In that case, the court held that "may" was used in § 707(b) "to indicate discretion only as far as deciding which of two options should be exercised." *Id.*, 2008 WL 4368668 *5. It noted that consideration of the payout creditors would receive under Chapter 7, even if larger than under Chapter 13, is not a basis for rebutting the presumption of abuse and could not justify the court's disregard of the unrebutted presumption of abuse.

10

under either a three year or five year plan, there may be funds available for unsecured creditors under a Chapter 13 plan.[25]

## IV. TOTALITY OF CIRCUMSTANCES.

As an alternative to dismissal under § 707(b)(2), the UST contends the case should be dismissed based upon the totality of the circumstances. Under § 707(b)(3), when the presumption of abuse does not arise or is rebutted, the court in considering whether the granting of relief would be an abuse of Chapter 7, the court shall consider whether the filing was in bad faith or under the totality of the circumstances demonstrates abuse.[26] In this case, since the presumption exists and had not been rebutted, the totality of the circumstances test has no relevancy. Nevertheless, the Court notes that if the test were applicable, the Court would deny the UST's contention for failure to prove abuse. The evidence provided at trial was addressed exclusively upon the vehicle expenses and the payroll deductions. There was no evidence offered or admitted from which the Court could find abuse.

## V. CONCLUSION.

For the foregoing reasons, the Court grants the UST's motion to dismiss or convert under § 707(b). There is an unrebutted presumption of abuse entitling the UST to the relief sought. If Debtor does not consent to conversion to Chapter 13 within 10 days, the case shall be dismissed.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be

---

[25] Although Schedules I and J may not be relevant, the Court notes that the difference between Schedule I income and Schedule J expenses is $16.17.

[26] 11 U.S.C. § 707(b)(3).

entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

    **IT IS SO ORDERED.**

###